at all, number 13-2103, Mr. Marenstein. Mr. Marenstein and Ms. Puglisi. Mr. Marenstein, your appearance by vote, I was up, correct? Okay, thank you, thank you. May it please the Court, Bruce Marenstein on behalf of Appellant William Conover. I'd like to reserve three minutes for rebuttal, if I may. Thank you, Your Honor. The fundamental question in this case, in this habeas appeal, is whether it constitutes punishment when the State extends the period of incarceration for a State prisoner, ostensibly to provide treatment for sexual offenses, when during the period of incarceration, during the full term of the criminal sentence, the State failed to afford the prisoner any treatment. And if the State fails to afford the prisoner any treatment, then the State fails to afford the prisoner any treatment, and the State fails Clearly, it may not seem fair, especially when it is noted in Justice Breyer's dissent that unlike Kansas, States like Minnesota and New Jersey normally give treatment for during the criminal incarceration, normally do. Here it was not done for some reason. But then you've got Sealing, which says that you can't apply, you can't have an as-applied challenge. And it would seem that the challenge here of Mr. Conover is as-applied. New Jersey normally gives this treatment. I didn't get it. I don't know why I didn't get it. But as-applied to me, it was punitive. I don't see how I get around Sealing. I think Sealing is distinguishable, Judge Ambrose, because in Sealing, essentially what the prisoner, what the petitioner was challenging was the conditions of his civil commitment. In that case, the focus was on, he said, you know, when you look at what's going on here in my civil commitment, I've restricted housing, it's essentially a jail. I am in prison, and therefore, this should be construed as punishment. And the court in Sealing said, we can't analyze every single civil commitment situation and say, well, in this one, there's a lot of freedom of movement and there's no bars, and so, therefore, it's civil. But in this one, it looks a lot like a prison, so we're going to call it criminal. And, in fact, at the end of the opinion, what the court essentially said was he may have some relief here under Section 1983. But how can you say, if Sealing says you can't do as-applied challenges, you can only do facial challenges, how can one challenge a New Jersey statute that, on its face, at least normally gives treatment for the condition during the period of criminal incarceration? Respectfully, Judge Ambrose, I don't think the court drew a bright line between facial challenges and as-applied challenges. My reading of Sealing is what the court said, is that we can't analyze essentially one-off cases, and that's exactly what Sealing was. We can't review the application of the particular statute to every individual. What I heard the court saying in Sealing is that the consequences of this is that everybody is going to come in and going to say that, applied to me, I wasn't treated right, and, therefore, you're going to have these myriad cases coming that's just going to be an inefficient way to come to a rule-of-law result. And I agree. Whether you agree or disagree, it seems that's what the court was saying. No, I agree that's what the court's saying. I don't think that that's what this case is. In this case, Mr. Conover is not saying, you know, here are the very particular facts as applied to me. This is a much broader claim. The claim is, as long as the state of New Jersey is not providing treatment to sexual offenders during the time that they're incarcerated, during the entire time they're spending serving their criminal sentence, they can't then turn around and say, oh, by the way, we need to keep you in, in his case, for another seven years, basically 50 percent of his criminal sentence. But the primary purpose of incarceration is to punish. Of course, some treatment can be afforded, but wasn't he assessed for whether he is amenable to treatment or not? He was assessed at the beginning for whether he would go to the special treatment facility,  Wasn't there a determination that he was not fit for that treatment regime? There was. And ironically, the same information was used 15 years later to conclude that he was subject to such treatment. So it certainly is questionable, you know, how that decision was made. But even after that initial date, again, he served a 15-year, a full 15-year criminal sentence, and throughout that time there were other opportunities to afford him treatment. I mean, he averted his habeas petition, and the state has not really disputed this. I'm trying to get to the strength of your argument. Is it that he would have gotten treatment during the incarceration that he did not get, or is it that he is not receiving treatment now, that he is under civil commitment? It's the first, Your Honor. The record really closed here in 2007, so we don't really know, based on the record here, whether or not he's getting treatment. My understanding outside the record is that he's been getting it. So his claim really has nothing to do, his claim hasn't changed from the beginning of his civil commitment to today, so it has nothing to do with the conditions or the terms. Your whole case rests with the incarceration? Yes. The case rests with the fact that during the incarceration he did not receive the treatment, which would have allowed him to be released at the end of his criminal sentence, and instead the state waived it until the conclusion. Well, I mean, conceivably may have allowed it. Correct. I mean, right now is, what is the status as to when there is a possibility of release here under the civil commitment? This happened since 2007. My understanding is that he gets reviewed every year for possible release, and I think that he's working towards release. He's going through the treatment and has been for seven years. And what was the latest review? What did it say? I don't know, Your Honor. I mean, that's not part of the record, and frankly it's not part of his claim. I don't think it matters whether he's receiving the treatment or not receiving the treatment. Well, I suppose it could matter if it's so indeterminate that he's never going to get out, and then your argument might be that it's a civil commitment that really relates back to making it punitive or add on to the punitive portion of the criminal conviction. Well, but I think that if he had received treatment, let's say even as late as 2005, when the record is abundantly clear that they knew he needed treatment at that point, let's say that they started treating him at 2005 instead of waiting until the conclusion of his criminal sentence,  and spent seven extra years, well, then he would have only had to spend five if he gets out a year. How old is Mr. Conover now? Excuse me? How old is he now? I'm not sure how old he is. His crimes were committed at this point 22 years ago. So I think he's in his 40s. He was fairly young at the time of the crimes. But I think that at any point that he had received treatment, it would have reduced the amount of time he had to spend in custody. And that's essentially what this case is about. If they had released him in 2007 and said, we're requiring you to go through treatment because you didn't get any when you were in prison, I don't think he'd have any complaint. Because at that point, you know, they didn't give him treatment, and now he needs and now he's released, but he wouldn't be in state custody. But he's being held in state custody specifically because he needs treatment that they failed to afford him during the entire 15 years prior to his criminal sentence. You're making ex post facto and Eighth Amendment claims, and I thought that those claims were related to the civil commitment. But now you're saying that's not so. They're essentially related to his incarceration. Is that accurate? Well, they're related to the civil commitment, Your Honor, in the sense that they're keeping him in custody against his will ostensibly for the civil commitment. So the civil commitment is the trigger that allows them to keep him in custody now seven years past the end of his term. And so it's an ex post facto, for example, violation because they're doing that based on a statute that was passed after his crimes, and yet our contention is that he's being held now because of the crimes he committed. What is the remedy, then, despite the finding that he is a danger to the public if he's released? Is that what you're seeking, or is it that you want to compel treatment? No. Again, my understanding is he's getting treatment. What he is seeking in his habeas petition is release with conditions, release with monitoring, release with treatment outside of the custody of the state of New Jersey. So, yes, he's seeking release. That's why he brought this as a habeas petition. His argument is that, and we believe that this is essentially an extension of his criminal sentence past the 15-year maximum. There has been a finding that if he is released, he would be very likely to commit the same offenses. I understand that. Again, that's the information that was used for that finding is the same information that was used 15 or 22 years ago to conclude that he shouldn't be given special treatment. So I don't know how much weight we can put on that. But even giving it some weight, that's the predicament the state put itself in by not treating him for 15 years. If they were concerned that releasing him at the end of his term was going to be a danger to society, then they had an obligation to treat him during those 15 years. So his release would be prompted, based on your argument, if we find that he should have gotten treatment, but he didn't get the treatment, therefore he should now be released. Well, I guess based on your finding that the seven years and continuing that he is spending in custody under the ostensibly civil commitment statute is punishment. And because he didn't receive treatment during his incarceration, which would have obviated the need for him to be civilly committed. And if it's punishment, again, I think it follows from that that it's an ex post facto and a double jeopardy violation as well as an Eighth Amendment violation. If there are no further questions, I see my time is about up. We'll get you back up for a vote. Thank you, Mr. Puglisi. Good morning, Your Honors. Lisa Puglisi, Assistant Attorney General on behalf of Dr. Meryl Main and the Attorney General's Office. Let me just ask a factual question, if I may. If it's correct, as Justice Breyer said in the dissent in Kansas v. Hendricks, that New Jersey is one of those states that does provide counseling and treatment for situations like this during the criminal phase of a person's incarceration or confinement. Why was that not done here? New Jersey, this was discussed by the State Supreme Court in its decision in WXC. New Jersey's Sex Offender Act and its Sexually Violent Predator Act are two different statutes with two different purposes. The Sex Offender Act, which is the criminal sentencing statute, provides that a person, a defendant who has been deemed to be repetitive, compulsive, willing and amenable for treatment may be sentenced to the ADTC, which is the state's sex offender treatment facility for inmates. The court talked about how the statute has evolved from just requiring repetitive and compulsive back in the 50s. There were too many individuals who were being sentenced under that. It resulted in overcrowding at ADTC and a watering down of the effectiveness of treatment. So the legislature amended the Sex Offender Act and included willing and amenable for treatment. And now in New Jersey, in order for a criminal defendant to be sentenced under the Sex Offender Act, they must be found to be willing, amenable, repetitive, compulsive. Here, Conover was not found, he was found to be repetitive but not compulsive. And therefore, the inquiry stops because a defendant has to meet. What's the difference between repetitive and compulsive? If you're an outsider and especially if you're a victim, it doesn't make any difference because you've been injured very significantly and you don't, you want something. If treatment can help, wouldn't you want it sooner as opposed to later? Yes, Your Honor, but the legislature, I'll answer the first question. That is, what's the difference? Repetitive is just that, repetitive. Multiple acts. Compulsive, in large part, depends on what the offender reveals during that ADTC evaluation. Statute requires that if a criminal defendant may fall under the Sex Offender Act, they are evaluated by the ADTC. And the Supreme Court pointed out that, in fact, Conover lied during his interview with the evaluator. Probably in an attempt to avoid being sentenced under the Sex Offender Act because it is a different sentencing scheme and offenders tend to spend more time in prison than they would if they were just sentenced to a regular facility. So the court noted in its decision that he lied during that evaluation, which led to the determination that he was not found to be compulsive. Compulsive is what drives that person to commit a sex offense. What was the ultimate result, though, that he was not amenable to treatment? So the evaluator doesn't even reach whether an offender is willing and amenable if they are not repetitive and compulsive. So because he was found repetitive but not compulsive, they never hit the final two prongs. That meant that he was not eligible for sentencing under the Sex Offender Act. At sentencing, he did, again, make a misrepresentation to the sentencing court that he had been molested as a child and admitted later, again, in the record before the Supreme Court and noted in their decision. What if there had been a finding that he was a sexual predator? Would he be amenable to treatment? That is not the question. I understand. During his incarceration, what if there had been a determination he was a sexual predator? Again, that determination is not made until an offender is reaching the end of their incarceration. That is the legislative sentencing scheme in New Jersey. You see, I'll get to my point, though. Sexual predator determination, you can get treatment for that. That's correct. But you can't get treatment for being a repetitive offender. It doesn't seem to make sense. Well, to the specifics of this case, the Supreme Court also noted, because it was in the record, that Conover was aware of his ability to request transfer to the ADTC for sex offender-specific treatment and that he did not do so. Even after he had been evaluated and I guess was on notice that he may be committed under the Sexually Violent Predator Act, inmates can, even if they are not sentenced under the Sex Offender Act, they're sentenced to a regular institution, they may request to be transferred to the ADTC into a separate program, but also it basically is akin to inmates under the Act. It is a sex offender-specific therapy. It's just separate. I don't mean to be obtuse. I'm not quite getting what you're saying. Okay. Try one more time. Sure. Even though Conover was not sentenced under the Sex Offender Act and he is in a regular facility, he has the ability to request a transfer to the ADTC to participate in sex offender-specific therapy, just not with sex offender act inmates. What was offered to him in 1998? Just to digress for a second. Remember at one point he was singled out and then they said, oh, we made a mistake. You're not getting out until 07. Right. There seems to have been some misunderstanding about the length of his sentence. And so at that point he was actually evaluated earlier for SVPA than he would normally have been. And he would have gotten some treatment had he gotten out in 2000 or 2001, as they initially but erroneously thought. Is that correct? I'm sorry, Your Honor. I missed the beginning. But he would have gotten some treatment in 98, 99, 2000 if they were correct, but it turns out they were an error that he would have been released in 2000 or 2001. Or his criminal confinement would be over then. If his criminal confinement were to be over then, if he were found to be under the Sexually Violent Predator Act, yes, then he would have been civilly committed and would have received treatment under the SVPA. But the point is that he was going to get some treatment while he was in criminal confinement in 98, 99. Sex offender specific? No. What was he singled out for? He was singled out because by nature, by virtue of his offenses, he had to be screened for civil commitment under the SVPA. That's what happens to any inmate. That was about two years before they initially thought he was to get out. That's correct. Was he screened in 05 two years prior to when he actually was to have been over with his criminal commitment? Yes. That eventually led to his civil commitment. But again, we're talking about the sentencing scheme in New Jersey. As discussed by the State Supreme Court in WXC, the Sex Offender Act has a different purpose than the Sexually Violent Predator Act. The Sex Offender Act, again, he was not found to fall under, but the Sex Offender Act is aimed to weed out those defendants who pose a high risk and are willing and amenable to treatment to put them in a treatment facility that's focused on sex offender treatment. He didn't fall under that. Under the SVPA, again, as discussed by the State Supreme Court, it's a different standard. They don't match. The screening for the SVPA is different than under the Sex Offender Act. You know, I look at the Predator Act as some form of quarantine to keep people away, keep people who have been convicted of violent sexual offenses away from the public. Is that a fair, accurate characterization? That is one of the purposes, yes. But another – But it's also to treat, isn't it? Absolutely, as stated by the legislature and in the statute itself. But that same goal isn't present with the Sexual Offender Act. As a criminal statute, it is designed to punish, to deter, but also a component of that is to treat because of future dangerousness. The New Jersey Supreme Court, in its dissent, spoke of something entirely different than double jeopardy or ex post facto. It spoke of due process. We didn't add that to the certificate of appealability that was granted here. But isn't that the crux of what your opposing counsels argue? Probably. I think that it is – the problem with this case and its being styled as a habeas is twofold at least. One is that the standard for habeas, for granting a writ of habeas, is that the petitioner has to show that the New Jersey Supreme Court's decision with regard to his case was contrary to or involved in unreasonable application of clearly established federal law as established by the U.S. Supreme Court. I would submit they have not demonstrated that here. With regard to Justice Albin's dissent on the substantive due process, it wasn't raised by Conover. The New Jersey Supreme Court majority really only dealt with it in response to Justice Albin's dissent. And while I suppose that may count as exhaustion, though I don't know that I'm willing to concede that point, he also didn't raise it in his petition, but now he's arguing it here in the Third Circuit. And so it really goes against the grain of what the habeas application is intended to address. Although I guess procedurally we could just amend our certificate of appealability, could we not, and add this and ask for a supplemental briefing. I suppose you could. I'm certainly not going to tell Your Honor that you cannot do that. You can. Others have. I would not judge. But I would submit that it may not have been, it wasn't raised by the petitioner before the New Jersey Supreme Court. And so it's not really appropriate to allow him to raise that now in a habeas petition when the standard is whether or not the state Supreme Court misinterpreted U.S. Supreme Court precedent. I mean, the argument in effect at base that Justice Albin's making is it just doesn't seem fair that you're saying to somebody, hey, we're not giving you treatment, but guess what, you really need treatment, so we'll give you treatment after your criminal conviction is over. And he's saying that just doesn't seem fair. But again, we have to go back to the statutory scheme, and I've probably beat that to death, so I'll leave it at what I said before. But also, his claim fails in substance because he lied during his sentencing to get out of the Sex Offender Act, so he would not go to ADTC and get treatment. He then did not request treatment as he could have. Well, he wasn't opposing the treatment when it was offered to him, or whatever, the evaluation and possible treatment when it was offered in 1998, when they thought his sentence was to have been up two years later. I'm not sure what Your Honor is speaking of. He was – if he wanted sex offender-specific treatment, the place to get it in the New Jersey Department of Corrections is at the ADTC. The inmate must ask for a transfer to the ADTC. As the Supreme Court noted, he failed to do that. Had he done that, he would have been entitled to an answer from the Department of – a reasoned answer from the Department of Corrections as to whether or not he could – he should be transferred there. I see my time is winding down. I just want to make one other point. The other issue with this, styled as a habeas, is that we're presupposing that if Conover got treatment while he was incarcerated, that that necessarily would have not made him committable under the SCPA. And I would – No, what I'm saying necessarily is just that if there's a chance that he might get out, then it would be a heck of a lot sooner if there were treatment and it were deemed after evaluation to have been successful. Point taken, Your Honor. Okay. Thank you. Thank you. Mr. Merenstein. Thank you, Your Honor. I just wanted to make three brief points. Before I do that, though, we did look at the record, and Mr. Conover was 25 at the time of the crimes in 1992, so he would be around 47 years old to answer your question at this time. Three brief points. First of all, on the sort of last point, it's really a red herring to raise these issues about the statements he made at the sentencing or whether or not he requested to be transferred to the ADTC throughout his sentence. If you look at the state court opinions and their analysis, if you look at the district court opinion, all of the courts looked at this as a pure legal issue. The legal issue that I presented at the beginning of my argument, the question of whether this could be constituted punishment if he's not afforded treatment during his incarceration and now is held for the purpose of treatment. And so I don't think it really matters what the record reflects in terms of did he request treatment. There's no dispute, and they've never contended he would not have been amenable to treatment. He was not afforded treatment. In fact, the New Jersey Supreme Court presented that as the issue presented to it. If he's not afforded treatment during his incarceration, is it punishment to then keep him longer for treatment? Have you raised any issues in your petition before our court here that were not raised and addressed before the New Jersey Supreme Court? Well, the only one that was not raised but was addressed is the due process issue. The due process issue, in the state courts, Mr. Conover, who was head counsel at the time, raised a number of claims. One of them was a very broad sort of generic constitutional claim that this violates his constitutional rights. My impression is that the two dissenting justices in the New Jersey Supreme Court interpreted that as a due process claim. Is that a defaulted issue if it wasn't raised in the New Jersey Supreme Court? Candidly, Judge, I think that it arguably was defaulted. I'm not sure that the record is clear because, again, he did raise in the state court sort of a generic this violates my state and federal constitutional rights. Whether or not that encompassed due process, I don't know. I'm wondering about the EDPA deference that we have to give the New Jersey Supreme Court. If it has already treated all the issues that you are presenting to us here, don't we have to just abide by what the New Jersey Supreme Court has said? Well, you don't have to abide by what they said. I think that EDPA says that if their analysis is an unreasonable application of clearly established Supreme Court law, which is why – That's a more accurate characterization, but don't we have to follow EDPA? I think you do have to follow EDPA, which is candidly why we focused on Hendricks on Justice Kennedy's concurrence, which we believe is the controlling opinion in Hendricks, because I believe that's the clearly established law that we have to overcome, and that's the clearly established law that I believe was unreasonably applied by the New Jersey Supreme Court. And that's why that's the focus of our briefing and the focus of my argument. And while I think the due process argument is very compelling, and I agree with the dissent in the New Jersey Supreme Court, I think that given EDPA, it's very hard for me to look to that dissent and to do anything with it in federal court. And so I don't disagree, Judge Fuentes. Thank you. And thank you again for taking this matter pro bono. It's very much appreciated by us at the court. It's our pleasure, Your Honor. Thank you to both counsel for a well-presented argument. We'll take the matter under advisement.